FTB:ADW/LZ
F. #2025R00137

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

JEAN RONALD TIRELUS,
ROBERTO SAMEDY,
MIGUEL JORGE and
EDOUARDO ST. FORT,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT
E.D.N.Y.
* MARCH 27, 2026*
BROOKLYN OFFICE

I N D I C T M E N T

Cr. No. _____26-CR-00069_____

(T. 18, U.S.C., §§ 371, 666(a)(1)(A),
666(a)(1)(B), 666(a)(2), 981(a)(1)(C),
982(a)(1), 982(b)(1), 1343, 1952(a)(3),
1956(h), 2 and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

Judge Ramon E. Reyes, JR
Magistrate Judge Peggy Kuo

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendants and Relevant Entities

      1.     Nonprofit #1, an entity the identity of which is known to the Grand Jury, was a charitable organization with tax-exempt status, headquartered in Brooklyn, New York, that provided home-care services to elderly individuals and individuals with acute medical needs in New York City. Nonprofit #1 received in excess of $10,000 in each calendar year under one or more federal programs and other forms of federal assistance.

      2.     Nonprofit #2, an entity the identity of which is known to the Grand Jury, was a charitable organization with tax-exempt status, headquartered in Brooklyn, New York, that provided social services to New Yorkers in need. Among other services, Nonprofit #2 operated numerous homeless shelters across New York City.

3. Nonprofit #1 and Nonprofit #2 were headquartered at the same location. They were both governed by a single board of directors and managed by the same staff. Nonprofit #1 and Nonprofit #2 are collectively referred to herein as the "Public Interest Organization," and the single board of directors is referred to as the "Public Interest Organization Board."

4. The defendant JEAN RONALD TIRELUS was the Chairman of the Public Interest Organization Board. TIRELUS resided in Brooklyn, New York.

5. The defendant ROBERTO SAMEDY was the Public Interest Organization's Executive Director. As the Executive Director, SAMEDY was responsible for managing the Public Interest Organization's operations and staff, as well as making strategic decisions on behalf of the Public Interest Organization. SAMEDY resided in Brooklyn, New York.

6. Company #1, an entity the identity of which is known to the Grand Jury, was a company controlled by the defendant JEAN RONALD TIRELUS. Company #1 was located in Brooklyn, New York.

7. Company #2, an entity the identity of which is known to the Grand Jury, was a company controlled by the defendants ROBERTO SAMEDY and JEAN RONALD TIRELUS. Company #2 was located in Brooklyn, New York.

8. Company #3, an entity the identity of which is known to the Grand Jury, was a company controlled by the defendant ROBERTO SAMEDY. Company #3 was located in Brooklyn, New York.

9. Vendor #1, an entity the identity of which is known to the Grand Jury, was a subcontractor that provided private security services for facilities operated by the Public Interest Organization. Vendor #1 was located in Queens, New York.

10. Vendor #2, an entity the identity of which is known to the Grand Jury, was a company that provided furniture for homeless shelters operated by the Public Interest Organization. Vendor #2 was located in Queens, New York.

11. Vendor #3, an entity the identity of which is known to the Grand Jury, was a company that provided maintenance services for shelter facilities operated by the Public Interest Organization. Vendor #3 was located in Queens, New York.

12. Vendor #4, an entity the identity of which is known to the Grand Jury, was a company that purported to provide private security services to homeless shelters operated by the Public Interest Organization. In a filing with the New York Department of State Division of Corporations, Vendor #4 was listed as a d.b.a. name of Vendor #1. Vendor #4 was located in Queens, New York.

13. The defendant EDOUARDO ST. FORT was the Chief Operating Officer of Vendor #1. ST. FORT resided in Taunton, Massachusetts.

14. The defendant MIGUEL JORGE was an officer of, and controlled, Vendor #2 and Vendor #3. JORGE was also an officer of Vendor #4 and a signatory on Vendor #4's bank account. JORGE resided in College Point, New York.

15. Bank #1, an entity the identity of which is known to the Grand Jury, was a financial institution headquartered in New York, New York. Bank #1 operated a community-lending-and-investment division focused on affordable housing projects ("Bank #1's Community-Lending Division").

## II.    The Criminal Schemes

16.    The defendants committed, and conspired to commit, schemes to syphon money from the Public Interest Organization to themselves.  In particular, the defendants RONALD TIRELUS and ROBERTO SAMEDY stole more than $1.3 million from the Public Interest Organization through embezzlement and fraud.  TIRELUS and SAMEDY also lined their pockets by steering Public Interest Organization business to Vendors #1 through #4, in exchange for bribe and kickback payments from the defendants MIGUEL JORGE and EDOUARDO ST. FORT.

### A.    The Embezzlement and Wire Fraud Schemes

17.    As Chairman of the Public Interest Organization Board and Executive Director of the Public Interest Organization, respectively, the defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY exercised significant control over the operations and finances of the Public Interest Organization.

18.    Between approximately August 2020 and January 2024, the defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY agreed to and did in fact fraudulently appropriate more than $1.3 million from the Public Interest Organization through embezzlement and fraud.  SAMEDY and TIRELUS pocketed that money and used it for their own purposes and to benefit their relatives and close associates.

19.    One way that the defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY embezzled the Public Interest Organization's funds was by directing the Public Interest Organization's staff to make payments to Company #1, even though Company #1 had done nothing to earn such payments.  At times, SAMEDY emailed fraudulent invoices from Company #1 to Public Interest Organization staff, implicitly or explicitly authorizing the staff to

make corresponding payments to Company #1, which they did. At other times, SAMEDY simply told Public Interest Organization staff to issue checks to Company #1. For example, on August 20, 2020, SAMEDY sent an email to the Public Interest Organization's Fiscal Director and another individual, directing them to "prepare a check made to [Company #1] for $67000." On the same date, a check in the amount of $67,000 from Nonprofit #1 to Company #1 was posted to Company #1's bank account. This payment did not correspond to any services provided by Company #1 to Nonprofit #1.

20. As another example, on May 1, 2023, the defendant JEAN RONALD TIRELUS emailed the defendant ROBERTO SAMEDY and members of the Public Interest Organization Board, attaching a proposed resolution that would authorize the Public Interest Organization to enter into a supposed partnership agreement with Bank #1's Community-Lending Division and with a company with a name similar to the name of Company #1. In the email, TIRELUS falsely wrote that Bank #1 had approached the Public Interest Organization "regarding a joint venture to support economic growth and affordable housing in the distressed area of New York City – Brooklyn in particular with a maximum value of five million dollars." The proposed resolution TIRELUS attached provided that the Public Interest Organization would contribute an investment of up to $800,000. After several members of the Public Interest Organization Board responded by email to express approval of the resolution, TIRELUS sent a version of the resolution signed by him as Chairman of the Public Interest Organization Board to SAMEDY, asking him to "remit [Public Interest Organization's] initial investment tranche of 25% or $800,000 to [Company #1]." Shortly thereafter, SAMEDY forwarded the signed resolution to the Public Interest Organization's Fiscal Director and another employee of the

Public Interest Organization. On May 10, 2023, Nonprofit #1 wired $800,000 to a Company #1 bank account for which TIRELUS was the sole signatory.

21.     However, as the defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY both knew at the time, no partnership or joint venture between the Public Interest Organization, Company #1 and Bank #1 existed. Nor was the $800,000 sent from Nonprofit #1 to Company #1 used "to support economic growth and affordable housing in the distressed area of New York City," as TIRELUS had represented. Instead, in the days and weeks after the money was transferred, a large portion of the funds was transferred, directly or indirectly, to bank accounts held in SAMEDY's and TIRELUS's own names or those of family members or close associates.

B.     The Vendor Kickback Scheme

22.     Between approximately February 2023 and January 2024, the defendants JEAN RONALD TIRELUS, ROBERTO SAMEDY, MIGUEL JORGE and EDOUARDO ST. FORT participated in a kickback scheme. TIRELUS and SAMEDY steered the Public Interest Organization's business to Vendors #1 through #4 in exchange for bribe and kickback payments from ST. FORT and JORGE. TIRELUS and SAMEDY did not disclose to the Public Interest Organization Board the fact that they were receiving bribe and kickback payments.

23.     As part of the scheme, on February 20, 2023, Vendor #1 and Company #2 entered into a partnership agreement. The defendant EDOUARDO ST. FORT signed the partnership agreement on behalf of Vendor #1 and the defendant RONALD JEAN TIRELUS signed the partnership agreement on behalf of Company #2. According to the terms of the agreement, Vendor #1 and Company #2 were to split the profits of the partnership.

24. The defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY subsequently sought approval from the New York City Department of Social Services for Vendor #1 to be a subcontractor of Nonprofit #1. Such approval was received on approximately April 5, 2023.

25. On approximately April 15, 2023, the Public Interest Organization and Vendor #1 entered into a written agreement, signed by the defendant ROBERTO SAMEDY for the Public Interest Organization and by the defendant EDOUARDO ST. FORT for Vendor #1, for Vendor #1 to provide private security services to facilities operated by the Public Interest Organization. Between approximately June 13, 2023 and January 4, 2024, the Public Interest Organization paid Vendor #1 approximately $1.75 million for such services. Between approximately June 15, 2023 and October 13, 2023, ST. FORT paid SAMEDY and the defendant JEAN RONALD TIRELUS more than $75,000 in bribes and kickbacks via payments from Vendor #1 to Company #1.

26. The defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY also agreed to steer Public Service Organization business to Vendors #2 through #4 in exchange for kickbacks. Between approximately June 2023 and February 2025, the Public Interest Organization paid Vendors #2 through #4 approximately $2.3 million. In return, the defendant MIGUEL JORGE paid SAMEDY and TIRELUS more than $100,000 in bribes and kickbacks. For example:

(a) On February 20, 2024, the Public Interest Organization paid Vendor #2 $52,299.68. On the same date, $5,000 was transferred from Vendor #2's bank account to a bank account in SAMEDY's own name. On February 21, 2024, an additional

$5,000 was transferred from Vendor #2's bank account to a bank account in SAMEDY's own name.

(b)	On December 30, 2024, the Public Interest Organization paid Vendor #2 $21,885.31.  On the same date, $20,000 was transferred from Vendor #2's bank account to a bank account in the name of Company #3, which was controlled by SAMEDY.

COUNT ONE
(Conspiracy to Commit Offenses Against the United States – The Embezzlement Scheme)

27.	The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

28.	In or about and between August 2020 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY, together with others, did knowingly and willfully conspire:

(a)	to devise a scheme and artifice to defraud Nonprofit #1 and to obtain money and property from it by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343; and

(b)	being agents of Nonprofit #1, to embezzle, steal, obtain by fraud, misapply and otherwise without authority convert to the use of a person other than the rightful owner, property of Nonprofit #1, which received, in one or more one-year periods, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance, which property was valued at

$5,000 or more, and was owned by, and was under the care, custody and control of, Nonprofit #1, to wit: United States currency, contrary to Title 18, United States Code, Section 666(a)(1)(A).

29.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants ROBERTO SAMEDY and JEAN RONALD TIRELUS, together with others, did commit and cause the commission of, among others, the following:

OVERT ACTS

(a)     On or about August 20, 2020, SAMEDY sent an email to employees of the Public Interest Organization, directing them to "prepare a check made to [Company #1] for $67000."

(b)     On or about August 31, 2021, SAMEDY sent an email to a Public Interest Organization employee attaching an invoice for September 2021 from Company #1. The invoice listed a balance of $6,500 for "Services."

(c)     On or about August 30, 2022, SAMEDY sent an email to a Public Interest Organization employee attaching an invoice for September 2022 from Company #1. The invoice listed a balance of $4,500 for "Services."

(d)     On or about May 1, 2023, TIRELUS sent an email to SAMEDY and members of the Public Interest Organization Board with the attachment "board-resolution-CCC_Partnership.pdf." The email stated, in relevant part:

> Thank you in advance for reviewing the attached resolution and providing your support and guidance. We were approached by [Bank #1's Community-Lending Division] and [Company #1] Global Funds regarding a joint venture to support economic growth and affordable housing in the distressed area of New York City – Brooklyn in particular

with a maximum value of five million dollars. [Bank #1's Community-Lending Division] requested that we pledge roughly 25% of the total fund as a junior investor and [Bank #1's Community-Lending Division] will absorb the first loss as the senior investor. I ask that you review the attached Board resolution and respond to whether you are supportive so that Roberto and I can continue with the negotiations.

(e)     On or about May 2, 2023, TIRELUS sent an email to SAMEDY stating, in part, "the Board has approved the attached resolution to move forward . . . . [P]lease remit [Public Interest Organization's] initial investment tranche of 25% or $800,000" to Company #1.

(f)     On or about May 2, 2023, SAMEDY forwarded TIRELUS's email to Public Interest Organization staff.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Wire Fraud – The Embezzlement Scheme)

30.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

31.     In or about and between April 2023 and May 2023, within the Eastern District of New York and elsewhere, the defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Public Interest Organization, and to obtain money and property from it by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce writings, signs, signals, pictures and sounds.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT THREE
(Embezzlement)

32. The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

33. In or about and between August 2020 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY, being agents of Nonprofit #1, together with others, did knowingly and intentionally embezzle, steal, obtain by fraud, misapply and otherwise without authority convert to the use of a person other than the rightful owner, property of Nonprofit #1, an organization that received benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance in one or more one-year periods, which property was valued at $5,000 or more, and was owned by, and was under the care, custody and control of Nonprofit #1, to wit: United States currency.

(Title 18, United States Code, Sections 666(a)(1)(A), 2 and 3551 et seq.)

## COUNT FOUR
(Conspiracy to Commit Offenses Against the United States –
The Vendor Kickback Scheme)

34. The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

35. In or about and between February 2023 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEAN RONALD TIRELUS, ROBERTO SAMEDY, MIGUEL JORGE and EDOUARDO ST. FORT, together with others, did knowingly and willfully conspire:

(a)     to use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of one or more unlawful activities, to wit:  Commercial Bribing in the First Degree, in violation of New York Penal Law Sections 180.03 and 20.00, and Commercial Bribe Receiving in the First Degree, in violation of New York Penal Law Sections 180.08 and 20.00, and thereafter to perform and attempt to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3); and

(b)     TIRELUS and SAMEDY, being agents of Nonprofit #1, to corruptly solicit and demand for the benefit of TIRELUS and SAMEDY, and accept and agree to accept, and ST. FORT and JORGE to corruptly give and offer, one or more things of value, to wit: United States currency, to one or more persons with intent to influence and reward an agent of an organization receiving federal program funds, to wit: TIRELUS and SAMEDY in their official capacities as agents of Nonprofit #1, in connection with business and one or more transactions and series of transactions involving a thing of value of $5,000 or more, while Nonprofit #1 was in receipt of, in any one-year period, benefits in excess of $10,000 under one or more Federal programs involving grants, subsidies, loans, guarantees, insurance and other forms of federal assistance, contrary to Title 18, United States Code, Sections 666(a)(1)(B) and (a)(2).

36.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants JEAN RONALD TIRELUS, ROBERTO SAMEDY, MIGUEL JORGE and EDOUARDO ST. FORT, together with others, did commit and cause the commission of, among others, the following overt acts:

### OVERT ACTS

(a) On or about February 20, 2023, TIRELUS, SAMEDY and ST. FORT entered into a written partnership agreement.

(b) On or about April 15, 2023, SAMEDY signed an agreement on behalf of the Public Interest Organization with Vendor #1 for the provision of security guard services.

(c) On or about April 15, 2023, ST. FORT signed the agreement on behalf of Vendor #1 with the Public Interest Organization for the provision of security guard services.

(d) On or about April 26, 2023, TIRELUS sent an email to ST. FORT, SAMEDY and others, attaching a New York City Department of Homeless Services letter providing notice that Vendor #1 was an approved subcontractor of the Public Interest Organization for a particular contract with New York City valued at approximately $4.59 million.

(e) On or about May 9, 2023, TIRELUS sent an email to an employee of the Public Interest Organization, copying SAMEDY, attaching the aforementioned April 15, 2023 agreement between the Public Interest Organization and Vendor #1.

(f) On or about November 30, 2023, payments totaling $464,320 were made from Nonprofit #2 to Vendor #4. On or about November 30, 2023, $22,768 was transferred from Vendor #4 to Company #1.

(g) On or about January 4, 2024, TIRELUS and SAMEDY caused a payment of $244,000 to be made from Nonprofit #1 to Vendor #1.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT FIVE
(Violation of the Travel Act)

37.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

38.     In or about and between February 2023 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY, together with others, did knowingly and intentionally use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of one or more unlawful activities, to wit: Commercial Bribe Receiving in the First Degree, in violation of New York Penal Law Sections 180.08 and 20.00, and thereafter performed and attempted to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(3) and 3551 et seq.)

## COUNT SIX
(Violation of the Travel Act)

39.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

40.     In or about and between February 2023 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EDOUARDO ST. FORT and MIGUEL JORGE, together with others, did knowingly and intentionally use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of one or more unlawful activities, to wit: Commercial Bribing in the First

Degree, in violation of New York Penal Law Sections 180.03 and 20.00, and thereafter performed and attempted to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(3) and 3551 et seq.)

## COUNT SEVEN
(Federal Program Bribery – The Vendor Kickback Scheme)

41.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

42.     In or about and between February 2023 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY, being agents of Nonprofit #1, together with others, did knowingly, intentionally and corruptly solicit and demand for their own benefit, and accept and agree to accept, one or more things of value, to wit: United States currency, from one or more persons, to wit: EDOUARDO ST. FORT and MIGUEL JORGE, intending to be influenced and rewarded in connection with business and one or more transactions and series of transactions of Nonprofit #1 involving things of value of $5,000 or more, while Nonprofit #1 was in receipt of, in any one-year period, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance.

(Title 18, United States Code, Sections 666(a)(1)(B), 2 and 3551 et seq.)

## COUNT EIGHT
(Federal Program Bribery – The Vendor Kickback Scheme)

43.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

44.     In or about and between February 2023 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EDOUARDO ST. FORT and MIGUEL JORGE, together with others, did knowingly, intentionally and corruptly give, offer and agree to give one or more things of value, to wit: United States currency, to one or more persons with intent to influence and reward, to wit: JEAN RONALD TIRELUS and ROBERTO SAMEDY in their official capacity as agents of Nonprofit #1, in connection with business and one or more transactions and series of transactions of Nonprofit #1 involving things of value of $5,000 or more, while Nonprofit #1 was in receipt of, in any one-year period, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance.

(Title 18, United States Code, Sections 666(a)(2), 2 and 3551 et seq.)

## COUNT NINE
(Money Laundering Conspiracy)

45.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

46.     In or about and between August 2020 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEAN RONALD TIRELUS and ROBERTO SAMEDY, together with others, did knowingly and intentionally conspire:

(a)     to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, and bribery and kickbacks, in violation of Title 18, United States Code, Section 666, knowing that the property

involved in such financial transactions represented the proceeds of some form of unlawful activity, and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b)     to engage in one or more monetary transactions, to wit: deposits, withdrawals, transfers and exchanges of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property of a value greater than $10,000 and derived from one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, and bribery and kickbacks, in violation of Title 18, United States Code, Section 666, contrary to Title 18, United States Code, Sections 1957(a) and 1957(b).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE THROUGH EIGHT

47.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Eight, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

48.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT NINE

49.     The United States hereby gives notice to the defendants charged in Count Nine that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

50.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

By: _Whitman G.S. Knapp, AUSA_
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK